OPINION OF THE COURT
 

 Jones, J.
 

 In effecting a settlement of personal injury claims against a third-party tort-feasor arising out of a motor vehicle accident, an insured will be held to have prejudiced the subrogation rights of his insurer unless he establishes
 
 *382
 
 by express provision in the release executed to the third party or by necessary implication arising from the circumstances of the execution of the release that the settling parties reserved the rights of the insurer against the third-party tort-feasor or otherwise limited the extent of their settlement to achieve that result.
 

 Plaintiff was injured in an automobile accident while a passenger in a motor vehicle owned and operated by James Felder. Felder was insured by Government Employees Insurance Company (GEICO) for coverage of basic no-fault benefits for both medical payments and lost earnings. Plaintiff was insured by Transamerica Insurance Co.,
 
 inter alia,
 
 for additional personal injury coverage, i.e., coverage for economic loss above the statutorily required $50,000 coverage.
 

 Plaintiff claimed, and was paid, the maximum amount available under Felder’s no-fault policy with GEICO and also made a claim for extended economic loss under his own policy with Transamerica. At the same time plaintiff brought an action in negligence against Felder. When this action was settled for $17,500 and plaintiff gave Felder a general release, Transamerica denied liability under its policy with plaintiff on the ground that by releasing Felder plaintiff had breached his obligation under that policy not to prejudice the subrogation rights of the insurer. Plaintiff thereupon instituted the present action against Trans-america to recover benefits to which he claimed he was entitled under the policy that had been issued to him.
 

 Supreme Court granted Transamerica’s motion for summary judgment and the Appellate Division affirmed, without opinion. We granted leave to resolve what were perceived as conflicting decisions in the lower courts as to the legal significance to be attached to releases given by insured persons in circumstances such as the present.
 
 [1]
 

 It is the burden of the insured to establish by virtue of an express limitation in the release or of a necessary implication arising from the circumstances of its execution that
 
 *383
 
 the release did not operate to prejudice the subrogation rights of the insurer. This flows reasonably from the express obligation of the insured under his policy of insurance not to prejudice the subrogation rights of the insurer because it is the insured who participates in and can control the fashioning of the terms of the settlement of the insured’s action against the third-party tort-feasor, a procedure in which the insurer has no part.
 

 We recognize that it is usually the burden of the party seeking to be excused from performance of a contract obligation on the ground that the other party has failed to perform his reciprocal obligations, to establish such failure. Thus, in the customary formulation it could be said that, in cases such as the present, to establish justification for refusal to pay benefits due under its policy of insurance on the ground that the insured breached its agreement not to prejudice the subrogation rights of the insurer, it would be incumbent on the insurer to establish the fact of such breach by the insured. The normal allocation of the burden of proof must give way in this instance, however, to the practicalities of the situation and to a realistic evaluation of the relative positions of the insured and the insurer. As stated, the insurer has no opportunity to participate in the negotiation or the determination of the terms of settlement between the insured and the third-party tort-feasor. By contrast, of course, the insured has every opportunity to do so, and has it in his power to obviate all controversy as to the scope of the release. In these circumstances, once the insurer has established the existence of a release, alleged to have constituted a breach of the insured’s agreement not to prejudice the insurer’s subrogation rights, we conclude that it is fair and fitting and no undue imposition on the insured to place on him the burden of persuasion that there was no such breach.
 

 Clearly, the preferable manner for the discharge of the obligation of the insured not to prejudice the subrogation rights of the insurer would be to include in the release to the third party a provision explicitly reserving the right of the insurer or expressly limiting the scope of the release to achieve the same result. Wé recognize, however, that there may be instances in which, even in the absence of an
 
 *384
 
 explicit provision in the release, it is clear that it was the intention of the parties to the settlement to limit the scope of the release or otherwise not to prejudice the rights of the insurer to subrogation. In any event, the determination in this regard is of direct concern to the insured and to the third-party tort-feasor, and it is their responsibility, if they do conclude to settle their differences, to make clear the scope of their agreement of settlement.
 

 In the present case plaintiff failed to protect the subrogation rights of Transamerica.
 
 [2]
 
 The general release that he executed and delivered to Felder was on a standard form, and released, in the familiar boiler plate terms, all claims which he had or might have against Felder “for, upon, or by reason of any matter, cause or thing whatsoever from the beginning of the world to the day of the date of this release”, without any accompanying words of reservation or limitation. No reference was, included in the release form to the pending action against Felder, but even had there been such a reference the result would have been no different inasmuch as the complaint in the action against Felder neither specified the elements of damage for which he was seeking recovery nor limited his claims for recovery to exclude claims as to which the insurer would have had a right of subrogation.
 
 [3]
 
 Obviously there was no express provision of the general release reserving the rights of the insurer or limiting the scope of the release, and it does not otherwise appear that the parties to the settlement intended any such reservation or limitation.
 
 [4]
 

 
 *385
 
 There is no merit to plaintiff’s assertion that Trans-america has a direct cause of action against Felder under subdivision 2 of section 673 of the Insurance Law; that subdivision relates only to actions against a “noncovered” person, which Felder was not.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Cooke and Judges Jasen, Wachtler, Meyer, Simons and Kaye concur.
 

 Order affirmed, with costs.
 

 [1]
 

 . (E.g., Appellate Division, First Department:
 
 Aetna Cas. & Sur. Co. v Schulman,
 
 70 AD2d 792, mot for Iv to app den 48 NY2d 608; Second Department:
 
 Record v Royal Globe Ins. Co.,
 
 83 AD2d 154; and
 
 Silinsky v State-Wide Ins. Co.,
 
 30 AD2d 1; Fourth Department:
 
 United States Fid. & Guar. Co. v Stuyvesant Ins. Co.,
 
 61 AD2d 1122; and
 
 Scinta v Kazmierczak,
 
 59 AD2d 313.)
 

 [2]
 

 . The Transamerica policy issued to plaintiff contained the following provision: “In the event of any payment for extended economic loss the Company is subrogated to the extent of such payments to the rights of the person to whom, or for whose benefit, such payments were made. Such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing to prejudice such rights.”
 

 [3]
 

 . The inclusion in paragraph 10 of the complaint of the recital mandated by CPLR 3016 (subd [g]) was required to enable plaintiff to bring the third-party action and accordingly must be taken to be nonindicative as to the extent of the elements of damages sought to be recovered. Compare CPLR 3043 (subd [a], par 6) as to particulars which may be required to be stated in a bill of particulars in a personal injury action under subdivision 1 of section 673 of the Insurance Law.
 

 [4]
 

 . Inasmuch as no argument is made and our attention is invited to no evidence in the record that, at the time of Weinberg’s execution of the release to him, Felder knew or possessed information which if reasonably pursued would have given it knowledge that Transamerica would have subrogation rights under the policy it had issued to Weinberg, we have no occasion to consider what significance, if any, such knowledge or the possession of such information might have with respect to the burden of persuasion which rests on an insured, in the absence of an express reservation or limitation in the
 
 *385
 
 release, to establish by necessary implication arising from the circumstances of the execution of the release that it did not operate to prejudice the subrogation rights of an insurer (see
 
 Hamilton Fire Ins. Co. v Greger,
 
 246 NY 162, 167-168;
 
 Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co.,
 
 240 NY 37, 46, 48).